IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JONATHAN CLARK
and ERIC S. CLARK,

          Plaintiffs,

vs.                                            Case No. 15-4965-SAC

THE CITY OF SHAWNEE, KANSAS,

          Defendant.

MEMORANDUM AND ORDER

The plaintiffs Jonathan Clark and Eric S. Clark appear *pro se* in filing their federal civil rights complaint for relief under 42 U.S.C. § 1983. On February 16, 2016, the plaintiffs filed a motion for summary judgment on all counts of their complaint. (Dk. 12). While the parties were briefing that motion, the court took up the defendant's ripe motion to dismiss. The court dismissed Jonathan Clark's Fourth Amendment claim for an unlawful initial traffic stop, denied dismissal on all other grounds properly before the court, and declined to address other arguments improperly raised. (Dk. 16). During the summary judgment briefing, the plaintiffs filed a motion for leave to file a first amended complaint (Dk. 18). The magistrate judge granted their motion, (Dk. 23), and the amended complaint has been filed, (Dk. 24). The plaintiffs' motion for summary judgment is now ripe. The court will rule on this pending motion rather than denying it as moot in light of the first

amended complaint. The changes with the first amended complaint do not appear to have a material effect on the court's decision.

"Summary judgment is appropriate only if 'the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.'" *Tolan v. Cotton*, ––– U.S. ––––, 134 S.Ct. 1861, 1866, 188 L.Ed.2d 895 (2014)(quoting Fed. R. Civ. P. 56(a)). At the summary judgment stage, the court is not to be weighing evidence, crediting some over other, or determining the truth of disputed matters, but only deciding if a genuine issue for trial exists. *Id*. The court performs this task with a view of the evidence that favors most the party opposing summary judgment. *Id*. Because the plaintiffs are filing an affirmative motion for summary judgment on all their claims, the plaintiffs face a heavy burden in showing the absence of all genuine issues of material fact for fact on each of their claims.

To its motion to dismiss, the defendant did attach as a business record, Ordinance No. 3003, and the record showed the ordinance was in force on December 2, 2013. This ordinance had amended the defendant's municipal code to include the following provision, "§ 9.13.040 Criminal Possession of a Firearm" ("§ 9.13.040"), which states in relevant part:

> A. Criminal Possession of a Firearm is an unlawful act that is prohibited within the City. Criminal Possession of a Firearm is:
>     . . . .
>     4. Transporting a Firearm in any air, land, or water vehicle, unless the Firearm is unloaded and encased in a container which completely encloses the Firearm.

(Dk. 7-1, pp. 7-8). The defendant also attached to its reply brief a business record showing that the defendant subsequently enacted an ordinance on August 25, 2014, which repealed § 9.13.040 regarding criminal possession of firearms. (Dk. 11-1, p. 1). Thus, the ordinance that is the subject of this litigation was repealed in August of 2014, or over one year before the plaintiffs filed this federal action challenging its constitutionality.

The plaintiffs seek summary judgment arguing § 9.13.040 is unconstitutional for violating the Second Amendment rights of both plaintiffs and for resulting in the officer's violation of Jonathan Clark's Fourth Amendment rights to be from unreasonable searches and seizures which occurred with the extended stop and search after the officer saw a firearm in Jonathan Clark's vehicle. The plaintiffs' motion identifies three issues for summary judgment. First, the plaintiff Eric Clark has standing to bring a Second/Fourteenth Amendments claim. Second, § 9.13.040 was the moving force to the violation of Jonathan Clark's Fourth Amendment rights. Third, the defendant has the burden of proving § 9.13.040 passes the heightened scrutiny required by the Second Amendment. The court will take up the issues in that order.

**Standing of Plaintiff Eric Clark**

This issue was raised and only summarily briefed in the defendant's motion to dismiss. In ruling on that motion, the court gleaned from the plaintiffs' complaint that between December 2, 2013, and August

3

24, 2014, the plaintiff Eric Clark, Jonathan's uncle, allegedly had not transported loaded firearms due to the threat of § 9.13.040. On what had been properly raised and argued in the defendant's briefs, the court did not find grounds for dismissal and concluded the complaint could be read as alleging some actual injury for Eric Clark. (Dk. 16, p. 8).

In support of his summary judgment motion, the plaintiff Eric Clark now submits a declaration under penalty of perjury stating:

> 2. On one or more occasions between December 2, 2013 and August 24, 2014, I refrained from transporting lawful loaded firearms into the City of Shawnee, Kansas *because* that conduct was prohibited by Ordinance 9.13.040 of the City of Shawnee, Kansas and *because* I feared detention, arrest, prosecution, incarceration, and fines were I to violate Ordinance 9.13.040 of the City of Shawnee, Kansas.
> 3. But for the Ordinance 9.13.040 of the City of Shawnee, Kansas, I would have exercised my Second Amendment right on one or more occasions for which I refrained between December 2, 2013 and August 24, 2014.

(Dk. 13., pp. 3-4). The plaintiffs' summary judgment pleadings did not properly cite this declaration in support of their statement of facts. The court will overlook this procedural default this time, but it will expect from this point forward that the plaintiffs will follow all of the requirements of D. Kan. Rule. 56.1.

The plaintiff Eric Clark argues the defendant's repeal of § 9.13.040 should not deprive this court of the power to determine the former ordinance's constitutionality. He speculates the defendant could enact again a similar or the same ordinance. Borrowing the rule for First Amendment standing when a statute has a chilling effect on speech, he argues standing

on the same ground here for his Second Amendment claim. Clark concludes that, "the restraint that was in place on the Second Amendment at least from December 2, 2013 until August 24, 2014 constitutes moving force for loss of freedom and irreparable injury." Clark argues the credible threat of injury comes from the December 2013 arrest of his nephew, the other plaintiff in this action.

The defendant responds that, "Eric Clark cannot prove he ever failed to carry a firearm because of the Ordinance." (Dk. 20, p. 3). Without any citation of authority, the defendant summarily posits that Eric Clark's own statement or testimony would be insufficient proof and that Clark would need to allege, "someone else accompanied him in every vehicle he occupied in Shawnee, Kansas between December 2, 2013 and August 24, 2014." *Id.* As it has been presented, this argument gains no traction in showing itself to have merit. As for the legal arguments advanced for Clark's standing, the defendant incorporates by reference its own arguments in the motion to dismiss briefing. The defendant rightly points out that the plaintiff Eric Clark is confusing the analysis for mootness with standing.

The Tenth Circuit recently addressed standing in the context of Second and Fourteenth Amendment challenges to some of Colorado's laws regulating firearms and large-capacity magazines. *Colorado Outfitters Ass'n v. Hickenlooper*, --- F.3d ---, 2016 WL 1105363 (10th Cir. Mar. 22, 2016). The panel's summary of the relevant law is helpful here:

5

> Under Article III of the United States Constitution, federal courts only have jurisdiction to hear certain "'Cases' and 'Controversies.'" *Susan B. Anthony List v. Driehaus*, ––– U.S. –––, –––, 134 S. Ct. 2334, 2341, 189 L.Ed.2d 246 (2014) (quoting U.S. Const. art. III, § 2). To satisfy Article III's case-or-controversy requirement, a plaintiff must demonstrate standing to sue by establishing "(1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Id.* at 2341 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).
> . . . .
> . . . Second, the plaintiffs bear the burden of establishing standing. *Raines v. Byrd*, 521 U.S. 811, 818 (1997). . . . Fourth, the elements of standing "are not mere pleading requirements but rather an indispensable part of the plaintiff's case." *Lujan*, 504 U.S. at 561. Thus, "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Id.* . . .
> . . . .
> As discussed above, standing generally has three requirements: (1) an injury in fact; (2) causation; and (3) redressability. *Lujan*, 504 U.S. at 560–61. To satisfy the first of these three elements, a plaintiff must offer something more than the hypothetical possibility of injury. The alleged injury must be concrete, particularized, and actual or imminent. *Id.* at 560. And while "'imminence' is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is 'certainly impending.'" *Id.* at 564 n. 2 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990)).
> To establish such an injury in the context of a pre-enforcement challenge to a criminal statute, a plaintiff must typically demonstrate (1) "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by [the challenged] statute," and (2) that "there exists a credible threat of prosecution thereunder." *Susan B. Anthony List*, 134 S. Ct. at 2342 (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979)).

*Hickenlooper*, 2016 WL 1105363 at *2-*3. Like in *Hickenlooper*, the Clarks are arguing the "credible-threat-of-prosecution" test for standing. At this

affirmative summary judgment stage, the plaintiff Eric Clark must present evidence and arguments establishing that this standing test is properly available to him for a damage claim, that he has pled a claim for declaratory relief, and that he can prove all the elements for an applicable test of standing as a matter of law. For the following reasons, the court finds the plaintiff Eric Clark has not carried this heavy burden.

"Standing to seek *retrospective* relief, such as damages, requires a showing that [1] the plaintiff suffered an injury in fact that is concrete and not conjectural or hypothetical, [2] the injury is fairly traceable to the actions of the defendant, and [3] the injury will be redressed by a favorable decision." *Marcavage v. City of New York*, 689 F.3d 98, 103 (2nd Cir. 2012) (citing *Lujan*, 504 U.S. at 560-61), *cert. denied*, 133 S. Ct. 1492 (2013). The plaintiff Eric Clark has neither argued these elements nor presented evidence sufficient to establish them as a matter of law. While the "credible-threat-of-prosecution" test would apply to a claim for declaratory relief, the plaintiff's complaint does not expressly allege this as a separate form of relief, but it may be intertwined with and may overlap with his claim for monetary damages. *See PETA v. Rasmussen*, 298 F.3d 1198, 1202 n. 2 (10th Cir. 2002). Even so, the plaintiff's problem is that "standing is determined at the time the action is brought." *Mink v. Suthers*, 482 F.3d 1244, 1253 (10th Cir. 2007) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC)*, 528 U.S. 167, 180 (2000)), *cert. denied*, 552 U.S. 1165 (2008). Eric Clark has

not come forward with any evidence that on the date of filing this complaint that he legitimately faced a credible threat of prosecution. Summary judgment is denied on this ground.

**Violation of Jonathan Clark's Fourth Amendment Rights**

The plaintiff Jonathan Clark here does not seek summary judgment on any claim but rather clarifies that his Fourth Amendment claim is for prolonged detention resulting from the officer's enforcement of § 9.13.040 which is allegedly unconstitutional. Because the plaintiffs' filing fails to make any case for summary judgment under this heading, the court summarily denies the motion here.

**Constitutionality of § 9.13.040**

The plaintiffs argue that § 9.13.040 implicated the constitutional right protected by the Second Amendment in prohibiting the general public from transporting a firearm that is either loaded or not encased. The plaintiffs advocate using a strict scrutiny review in determining the constitutionality of repealed § 9.13.040. They argue this review is justified because the ordinance had impacted the general public traveling "in any air, land or water vehicle" and prohibited that public from having firearms available and operable for self-defense while so traveling in the City of Shawnee. The plaintiffs argue against a lesser standard because the Second Amendment creates a fundamental right and because the ordinance had burdened all those traveling in vehicles. The plaintiffs point to the procedural

8

burden resting on the defendant to show constitutionality. The plaintiffs conclude with this argument:

> As referenced in Plaintiffs' Complaint, paragraph 22, while the City's ordinance made it unlawful to transport even an **unloaded** firearm which may be resting in a standard holster inside of the door of the truck, it left as completely lawful to (sic) ability to walk, or stand, behind that same truck and hold a **loaded** firearm in hand; therefore, it is clear that no government interest is substantially achieved by the ordinance without **irrational** extrapolation. In other words, the Ordinance is not even able to pass rational-basis scrutiny which means it is facially unconstitutional for being an irrational law.

(Dk. 13, p. 15).

The defendant asks the court to apply intermediate, not strict, scrutiny, because § 9.13.040 did not prohibit all handgun possession and did not implicate the right of self-defense in the home as in *District of Columbia v. Heller*, 554 U.S. 570 (2008). Instead, § 9.13.040 only prohibited the vehicular transportation of firearms that were either loaded or not fully encased. The defendant argues the right to immediate self-defense "dwindles outside of the home." (Dk. 20, p. 6).  The defendant acknowledges its burden, "To pass constitutional muster under intermediate scrutiny, the government has the burden of demonstrating that its objective is an important one and that its objective is advanced by means substantially related to that objective." (Dk. 20, p. 7 (quoting *United States v. Reese*, 627 F.3d 792, 802 (10th Cir. 2010), *cert. denied*, 563 U.S. 990 (2011)). The defendant identifies several arguable objectives behind § 9.13.040. It provides that firearms are safely secured during transportation

9

and serves the "public safety purpose in preventing 'road rage' incidents from quickly and needlessly elevating to a fatal exchange of gunfire." (Dk. 7-8). "By permitting park patrons to carry unloaded firearms within their vehicles, § 2.4(b) leaves largely intact the right to 'possess and carry weapons in case of confrontation.'" *United States v. Masciandaro*, 638 F.3d 458, 474 (4th Cir.)(quoting *Heller*, 128 S. Ct. at 2797), *cert. denied*, 132 S. Ct. 756 (2011). The defendant argues that unlike the home, one's need for immediate armed self-defense is less on public roadways which are patrolled by law officers. The defendant points to the safety of law enforcement officers and cutting down on the risk of loaded weapons being immediately accessible to the vehicle's occupants. In the defendant's judgment, § 9.13.040 does not infringe on the important right of self-defense in the home, and it survives intermediate scrutiny, because it limits only the transportation of firearms by requiring them to be unloaded and encased. The defendant argues this restriction is substantially related to the important objectives outlined above. Finally, the defendants observe genuine issues of material fact surround any damage award as to preclude summary judgment.  In reply, the plaintiffs observe that § 9.13.040 essentially precludes uncasing or loading a firearm to defend oneself anytime while traveling in a vehicle.

   In *District of Columbia v. Heller,* 554 U.S. 570 (2008), the Supreme Court recognized an individual Second Amendment right to keep

and bear arms and central to it, "the inherent right of self-defense," and concluded this right was violated by a statute that effectively banned all handgun possession in the home and required any lawful firearm to be rendered inoperable by disassembly or trigger lock:

> The handgun ban amounts to a prohibition of an entire class of "arms" that is overwhelmingly chosen by American society for that lawful purpose. The prohibition extends, moreover to the home, where the need for defense of self, family, and property is most acute. Under any of the standards of scrutiny that we have applied to enumerated constitutional rights, banning from the home "the most preferred firearm in the nation to 'keep' and use for protection of one's home and family," . . ., would fail constitutional muster.

554 U.S. at 628 (citation omitted). In addressing the statute that required weapons to be rendered inoperable, the Court added, "This makes it impossible for citizens to use them for the core lawful purpose of self-defense and is hence unconstitutional." 554 U.S. at 630. The Court did not address the licensing requirement and ordered, "Assuming that Heller is not disqualified from the exercise of Second Amendment rights, the District must permit him to register his handgun and must issue him a license to carry it in the home." 554 U.S. at 635. In *McDonald v. City of Chicago, Ill.*, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010), the Court found the Fourteenth Amendment made the Second Amendment right to keep and bear arms fully applicable to the States and struck down two Illinois cities' ordinances that effectively banned handgun possession by almost all private citizens. One of the cities had ordinances that required valid registration certificates for any firearm possessed and that "prohibit[ed] registration of most handguns, thus

11

effectively banning handgun possession by almost all private citizens who reside in the City." 177 L.Ed.2d at 904.

The Tenth Circuit has agreed with other circuits that *Heller* follows a "two-pronged approach to Second Amendment challenges" that entails:

> *Heller* thus "suggests a two-pronged approach to Second Amendment challenges" to federal statutes. *United States v. Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010); *see United States v. Skoien*, 614 F.3d 638, 641-42 (7th Cir. 2010) (en banc). Under this approach, a reviewing court first "ask[s] whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee." *Marzzarella*, 614 F.3d at 89. "If it does not, [the court's] inquiry is complete." *Id*. "If it does, [the court] must evaluate the law under some form of means-end scrutiny." *Id*. "If the law passes muster under that standard, it is constitutional." *Id*. "If it fails, it is invalid." *Id*.

*United States v. Reese*, 627 F.3d 792, 800-01 (10th Cir. 2010). In *Reese*, the circuit panel concluded the federal law prohibiting possession of a firearm while subject to a domestic protection order imposed a burden on the challenger's right to possess otherwise legal firearms.

The answer to the first step demands "an 'historical inquiry' into 'whether the conduct at issue was understood to be within the scope of the right at the time of ratification.'" *Kolbe v. Hogan*, 813 F.3d 160, 172 (4th Cir. 2016) (quoting *United States v. Chester*, 628 F.3d 673, 680 (4th Cir. 2010) and citing *Heller*, 554 U.S. at 626-27), *rehearing en banc granted*, 2016 WL 8511670 (Mar. 4, 2016). Thus, "'if the challenged regulation burdens conduct that was within the scope of the Second Amendment as historically understood, then we move to the second step of applying an

12

appropriate form of means-end scrutiny.'" *Id.* The Court in *Heller* affirmatively establishes the "guarantee," pre-existing the Second Amendment, of "the individual right to possess and carry weapons in case of confrontation." 554 U.S. at 592. The purpose for this right was not just to preserve the militia but extended to "self-defense and hunting." 554 U.S. at 599. While *Heller* discussed the purpose of self-defense within the home, the Tenth Circuit recently acknowledged that, "[t]he need for self-defense, albeit less acute, certainly exists outside the home as well. *Moore v. Madigan*, 702 F.3d 933, 935–40 (7th Cir. 2012), *rehearing en banc denied*, 708 F.3d 901 (7th Cir. 2013).

"The right to keep and bear arms as a matter of history and tradition, 'is not unlimited,' of course, as even law-abiding citizens do not have 'a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.'" *Kolbe*, 813 F.3d at 172 (quoting *Heller*, 554 U.S. at 626). "Accordingly, if the government can establish that a challenged firearms law regulates activity falling outside the scope of the Second Amendment right as it was understood at the relevant historical moment—1791 or 1868—then the analysis can stop there; the regulated activity is categorically unprotected, and the law is not subject to further Second Amendment review." *Ezell v. City of Chicago*, 651 F.3d 684, 702-703 (7th Cir. 2011). Common sense is apparent in the Seventh Circuit's latest comment on this topic:

13

> *Heller* does not purport to define the full scope of the Second
> Amendment. The Court has not told us what other entitlements the
> Second Amendment creates or what kinds of gun regulations
> legislatures may enact. Instead the Court has alerted other judges, in
> *Heller* and again in *McDonald*, that the Second Amendment "does not
> imperil every law regulating firearms." *McDonald*, 561 U.S. at 786, 130
> S.Ct. 3020 (plurality opinion); *Heller*, 554 U.S. at 626–27 & n. 26, 128
> S.Ct. 2783. Cautionary language about what has been left open should
> not be read as if it were part of the Constitution or answered all
> possible questions. It is enough to say, as we did in [*United States v.*]
> *Skoien*, 614 F.3d [638] at 641 [(7th Cir. 2010)(en banc)], that at least
> some categorical limits on the kinds of weapons that can be possessed
> are proper, and that they need not mirror restrictions that were on the
> books in 1791.

*Friedman v. City of Highland Park, Illinois*, 784 F.3d 406, 410 (7th Cir. 2015) *cert. denied sub nom.*, *Friedman v. City of Highland Park, Ill.*, 136 S. Ct. 447 (2015).

The plaintiffs frame the right protected by the Second Amendment and implicated by the ordinance as the general public's right to transport in a vehicle a firearm that is either loaded or not encased. Reading § 9.13.040 in its full context suggests a different framing of this right. This ordinance actually exempted from the transportation restriction any person who was "in possession of a current and valid License" under "the Kansas Personal and Family Protection Act, pursuant to K.S.A. 75-7c01 and K.S.A. 75-7c17, to encompass the entire act and all exemptions included therein." (Dk. 13-1, p. 7). This statutory license would permit carrying a concealed handgun and would be issued only after meeting various requirements including, most notably, the completion of a safety and training course and a criminal background check. This exemption of those licensed for conceal

14

carry would certainly change the right implicated here, in that a person so licensed was not prohibited from transporting in a vehicle a firearm that was loaded and that was not encased. *See, e.g.*, *Horsley v. Trame*, 61 F. Supp. 3d 788, 791-93 (S.D. Ill. 2014), *aff'd,* 808 F.3d 1126 (7th Cir. 2015). Neither side has incorporated this exemption into their Second Amendment analysis offered in this summary judgment proceeding.

For purposes of this motion, the court is going to follow the approach of some circuits and simply assume Second Amendment application and move to the second step. The defendant took this position in its brief. The court believes this makes sense here, as the parties have not separately analyzed the first step and as the right implicated by this repealed ordinance has not been fully defined by the parties and, therefore, is subject to some deliberation. *See United States v. Hosford*, 82 F. Supp. 3d 660, 664-65 (D. Md. 2015). With that said, the court recognizes that since *Heller* and *McDonald*, the Tenth Circuit has observed the "narrowness" of the holding in *Heller* and the Court's recognition:

> "Nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial side of arms."

*Bonidy v. U.S. Postal Service*, 790 F.3d 1121, 1124 (10th Cir. 2015) (quoting *Heller*, 554 U.S. at 626-27), *cert. denied*, 2016 WL 1078949 (Mar. 21. 2016). The Tenth Circuit also quoted the footnote attached to this

statement in *Heller*, "'We identify these presumptively lawful regulatory measures only as examples; our list does not purport to be exhaustive.'" *Id.* at n.1 (quoting *Heller*, 554 U.S. at 627 n. 26). These same assurances were repeated by the Court in *McDonald*. *Bonidy*, 790 F.3d at 1124-25. Thus, the court in *Bonidy* concluded, "the Second Amendment right to carry firearms does not apply to federal buildings and adjacent parking lots. 790 F.3d at 1125.

Assuming the right implicated by the full text of the ordinance does come within the Second Amendment, the court will evaluate the ordinance using a means-end scrutiny. The Tenth Circuit recently stated, "If Second Amendment rights apply outside the home, we believe they would be measured by the traditional test of intermediate scrutiny. *See United States v. Reese*, 627 F.3d 792, 802 (10th Cir. 2010) (applying intermediate scrutiny to a Second Amendment as-applied challenged to § 922(g)(8))." *Bonidy*, 790 F.3d at 1126. The *Bonidy* panel expressed a rationale for this test that is on all fours with the circumstances here:

> Intermediate scrutiny makes sense in the Second Amendment context. The right to carry weapons in public for self-defense poses inherent risks to others. Firearms may create or exacerbate accidents or deadly encounters, as the longstanding bans on private firearms in airports and courthouses illustrate. The risk inherent in firearms and other weapons distinguishes the Second Amendment right from other fundamental rights that have been held to be evaluated under a strict scrutiny test, such as the right to marry and the right to be free from viewpoint discrimination, which can be exercised without creating a direct risk to others. Intermediate scrutiny appropriately places the burden on the government to justify its restrictions, while also giving governments considerable flexibility to regulate gun safety.

790 F.3d at 1126. The Tenth Circuit precedent compels this court to apply the traditional test of intermediate scrutiny. Thus, "[t]o pass constitutional muster under intermediate scrutiny, the government has the burden of demonstrating that its objective is an important one and that its objective is advanced by means substantially related to that objective." *United States v. Reese*, 627 F.3d at 802 (internal quotation marks and citation omitted).

The court is not convinced from reading the parties' briefs that the defendant will not be able to carry its burden at this step as a matter of law. Indeed, the defendant argues several possible public safety aims that are important, that seem to be aims of the ordinance, and that seem to be advanced by substantially related means. Pointing uncased firearms and/or using loaded firearms during the operation of vehicles on public roadways plainly carry safety risks that go beyond those commonly associated with the firearm itself. Additionally, the defendant describes such conduct as associated with "road rage" incidents so that prohibiting this conduct could prevent escalation into these incidents and all the safety risks involved with them. The defendant borrows some of the reasoning from *United States v. Masciandaro*, 638 F.3d at 473-74, which found no Second Amendment violation in the application of a federal regulation that prohibited carrying or possessing a loaded handgun in a motor vehicle within a national park:

> Loaded firearms are surely more dangerous than unloaded firearms, as they could fire accidentally or be fired before a potential victim has the opportunity to flee. The Secretary could have reasonably concluded

> that, when concealed within a motor vehicle, a loaded weapon becomes even more dangerous. In this respect, § 2.4(b) is analogous to the litany of state concealed carry prohibitions specifically identified as valid in *Heller*. *See* 128 S. Ct. at 2816–17. By permitting park patrons to carry unloaded firearms within their vehicles, § 2.4(b) leaves largely intact the right to "possess and carry weapons in case of confrontation." *Heller*, 128 S.Ct. at 2797. While it is true that the need to load a firearm impinges on the need for armed self-defense, see Volokh, *Implementing the Right for Self–Defense*, 56 U.C.L.A. L. Rev. at 1518–19, intermediate scrutiny does not require that a regulation be the least intrusive means of achieving the relevant government objective, or that there be no burden whatsoever on the individual right in question. *See United States v. Baker*, 45 F.3d 837, 847 (4th Cir. 1995). Moreover, because the United States Park Police patrol Daingerfield Island, the Secretary could conclude that the need for armed self-defense is less acute there than in the context of one's home.

638 F.3d 458 at 473-74. The defendant highlights the increased danger of transporting loaded firearms and the reduced need for self-defense as the public roadways are patrolled by law enforcement officers. The defendant also notes that the ordinance does not utterly foreclose armed self-defense, nor must the ordinance be the least intrusive means of attaining the governmental objective. The ordinance permits the possession of an unloaded and encased weapon, and nothing prevents a person from pulling over a vehicle and then uncasing and loading a vehicle for self-defense use outside of the vehicle. This would serve the public safety purpose of preventing the exchange of gunfire between vehicles operating on public roadways and all of the safety risks associated with these incidents. Thus, the defendant asks the court to find that the ordinance survives intermediate scrutiny and that it does not violate the plaintiff's Second Amendment rights.

Because the constitutionality issue had not been properly framed for the court's final ruling at this time, because the parties have not been afforded a full opportunity to brief all of the matters related to this issue, some of which are noted above, and because the parties now have a legal template for advancing their arguments, the court will withhold its ruling at this time.

IT IS THEREFORE ORDERED that the plaintiffs' motion for summary judgment (Dk. 12) is denied in all respects.

Dated this 29th day of April, 2016, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge